**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 5/21/96**

**FOR THE TENTH CIRCUIT**

────────────────────────

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 95-1423 |
| | ) | |
| LEROY WALTER BAKER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

────────────────────────

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 95-CR-79-1)**

────────────────────────

Henry L. Solano, United States Attorney, and William R. Lucero, Assistant United States Attorney, Denver, Colorado, on the brief for Plaintiff-Appellee.

Mitchell Baker, Denver, Colorado, on the briefs for Defendant-Appellant.

────────────────────────

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

────────────────────────

**BRORBY**, Circuit Judge.

────────────────────────

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

A jury found Leroy Walter Baker guilty of two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and two counts of making a false statement in acquisition of a firearm in violation of 18 U.S.C. 922(a)(6). We do not address all of the issues Mr. Baker raises on appeal because we find he was denied his right to self-representation and therefore we reverse his conviction and remand for a new trial.

A criminal defendant has a constitutional and a statutory right to self-representation. *Faretta v. California*, 422 U.S. 806, 834-36 (1975); 28 U.S.C. §1654. The Supreme Court has held when the right of self-representation is exercised it "usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984). The defendant must meet several requirements in order to invoke this right. First, the defendant must "clearly and unequivocally" assert his intention to represent himself. *United States v. Reddeck*, 22 F.3d 1504, 1510 (10th Cir. 1994). Second, this assertion must be timely. *United States v. Nunez*, 877 F.2d 1475, 1478 (10th Cir.), *cert. denied*, 493 U.S. 981 (1989). Finally, there must "be a showing that he 'knowingly and intelligently' relinquishes the benefits of representation by counsel." *United States v. McKinley*, 58 F.3d 1475, 1481 (10th Cir. 1995) (quoting *Faretta*, 422 U.S. at 835). The key question is whether the defendant is competent to waive his or her right to counsel, not whether the defendant possesses legal knowledge or is otherwise competent to represent him or herself. *Id.*

2

The government claims Mr. Baker "did not make a clear and unequivocal request to appear pro se; on the contrary, his requests for self-representation were confusing." We disagree. Although at times Mr. Baker may have expressed his thoughts in a somewhat muddled manner, his desire to represent himself was consistently expressed and discussed by himself, his attorneys, the magistrate judge and the district court judge. Our perusal of the record indicates that Mr. Baker brought the matter up nearly every time he appeared before the court. On April 11, 1995, in his initial appearance before the magistrate judge, Mr. Baker stated: "I would like to have a -- a -- I would like to be pro se with a counsel. In other words, I do want a counsel, but I do not want him to have abso' -- absolute control, because I am -- I do know the law. You know, I am not ignorant of the law. " The magistrate judge told Mr. Baker "You do have a right to have an attorney. If you are choosing to represent yourself and want advisory counsel, we can take that up at an appropriate time." Mr. Baker responded "Now, on that I would like to have, you know, like, in other words, a counsel to advise me." Subsequently, the magistrate judge appointed attorney Edward Harris to represent Mr. Baker. On May 30, 1995, in Mr. Baker's first appearance before the district court, the following exchange occurred:

> Mr. Harris: .... We have a preliminary matter which I'd like to address before any of [the] written motions, if I might.
>
> The Court: Go ahead.
>
> Mr. Harris: And that is I've discussed with Mr. Baker the situation concerning advisory counsel vs. counsel vs. *pro se*, and he indicates to me that he wishes me to withdraw and he wishes to represent himself.
>
> The Court: His motion is denied. Let's proceed. I've had too many cases in this court where people have tried to represent themselves and they just have not had their day in court. He can certainly confer with you and be a partner with you in making decisions, but my experience is very strongly that those who try to represent themselves do not do a good job and they really don't have their constitutional rights

3

protected and their day in court. So that motion will be denied.

Later in that same hearing, Mr. Harris again addressed the court regarding Mr. Baker's wish to represent himself by noting:

> Mr. Harris: .... He has some pretty strong ideas as to how he wants this case tried. My hands are bound for a variety of reasons as to how I might try the case, and he is a -- I have in dealing with him found Mr. Baker to be intelligent albeit not trained in the law. But I'm not -- I guess what I'm saying is I'm not sure I can do more for him at this point than he can do for himself.
>
> I think frankly the result is likely to be the same, is likely to a be a conviction from a jury of 12; and I think given that, he ought to take a shot at it himself, if he feels strongly about it, as he has a right to do, to represent himself *pro se*. And I know he feels very strongly about it.
>
> If nothing else, I would ask simply that your Honor hear him on that subject limited only to that subject and not discussing any aspects of the case itself, because I know he feels extremely strongly that he wants to defend this case a certain way and by himself.
>
> The Court: There are just so many cases both in this court and before other judges where other defendants have felt that strongly, and in some cases where they have tried the case themselves and had advisory counsel and then later appealed on the grounds that they did not have a fair trial and the judge should have acted to make sure they had counsel rather than letting them make a mess of things *pro se*.
>
> There are so many statutes and so many rules that have to be known. There is the rules of evidence and the rules of criminal procedure, and we follow those rules specifically.
>
> And if one is not trained in the law, it's like, you know, taking out your own appendix: You just don't know, you just don't understand what's going on.

At this point the district court listened to Mr. Baker's opinions, which soon disintegrated into a discussion regarding the different branches of the federal government, before the district court reiterated its denial of Mr. Harris's motion to withdraw as counsel and admonished Mr. Baker to "try to work out" his relationship with Mr. Harris.

4

On June 15, 1995, Mr. Baker appeared in front of the magistrate judge for a hearing regarding Mr. Harris's request to withdraw as Mr. Baker's counsel:

> [Magistrate]: [The district court judge] wanted me to hold a hearing, wanted me to ascertain what the present situation was vis-a-vis the defendant's view of, and counsel's view, about whether or not the attorney-client relationship should continue. I know it's been denied at one point in time, but she said that I had complete liberty to review the thing and to review everything and to determine where things were at.
>
> ....
>
> [Mr. Baker]: At that first hearing, I had asked for a -- a advisory counsel. You know, like see, in other words, that I was educated back east in a school, Notre Dame. I am not a -- I'm of a -- I know the law basically and I know how to -- I'm of -- of a stable mind, you know, and that I have defended cases on -- as pro se before. And that's why I was saying that if because of the lack of me not having access to my records that if I'm to bear the sins of this case before you, with all due respect, you know, then I feel that, you know, the issues -- that I should be aware of the issues in my case.
>
> And so, therefore, like I'd asked for that -- for an assistant, as far as -- like in Colorado law, as far as how Colorado applies the law, I may have a defective [sic] in regards to a how you apply it. But as far as basic law and research, I do know law and research, and I'd like to go through this pro se.

At the hearing, the magistrate judge questioned Mr. Harris and Mr. Baker about the status of their relationship, Mr. Baker's understanding that appointing new counsel would most likely necessitate his waiving his right to a speedy trial, and Mr. Mitchell Baker's willingness to serve as advisory counsel. At the end of the hearing, the magistrate judge stated that he would immediately contact Mitchell Baker, an attorney Mr. Baker had selected from the list of attorney's available for appointment, to see if he would be willing to undertake the case as advisory counsel and dismissed Mr. Harris from the case.

Later that day, the prosecuting attorney and Mr. Baker, appearing pro se, held a hearing

5

before the district court regarding the morning's hearing before the magistrate judge. At this hearing the district court established that Mr. Harris had been excused from the case and that the magistrate judge was attempting to contact as a replacement Attorney Baker. At this point, Defendant Baker again attempted to express his desire to represent himself, to which the district court responded:

> But you've not been trained in the law. That's the problem, and that was what concerned me before and it's what concerns me now.

> If you're going to have a day in court, you need an attorney. And I'd like you to see if you can work with [the magistrate judge] to see if we can get an attorney for you. If you absolutely insist that you want to represent yourself -- and I strongly advise you not to -- then at least you should have an advisory attorney.

Attorney Baker agreed to serve as counsel for Defendant Baker. On July 17, 1995, the first day of trial, Attorney Baker made his first appearance before the district court and noted:

> Mr. Baker: Your Honor, there is another matter, and I apologize for the delay; but I think it needs to be brought up sooner rather than later.

> Mr. Baker and I were both under the impression that I was advisory counsel until this past Wednesday.

> The Court: And I was not, because I asked the Magistrate Judge to appoint Counsel.

> Mr. Baker: I understand that. And what had happened, your Honor, is I believe the magistrate had spoken with Mr. Baker and then had a rather lengthy conversation with me which dealt with the issue of being advisory counsel. Consequently, I approached this case as advisory counsel up until I found out from Mr. Hein last week that I was trial counsel. I've discussed that with Mr. Baker and I know Mr. Baker wants to indicate to the Court what his feelings are regarding representing himself.

> The Court: Do you think we can do that tomorrow, also? I'd like to try to ask a few more questions of the jury and let them go.

> I have indicated through my law clerk -- and I'll tell Mr. Baker now -- that I will give him every opportunity to confer with you, make suggestions to you, give you -- you know, have him come up to the bench; but it's my honest and sincere experience that he's much better off with counsel than just trying to do this himself

6

with advisory counsel.

The next day, Attorney Baker again discussed the misunderstanding that had occurred regarding his appointment as advisory or trial counsel, which concluded with the following exchange:

> The Court: It's totally hearsay -- I haven't talked to [the magistrate judge] -- but apparently he did tell Mr. Hein that he did appoint you as counsel because that is what the Court wanted okay. Is there any problem on that score?

> [Attorney] Baker: Not for me. I know the problem is for Mr. Baker, who continues to wish to represent himself, your Honor. I'll do whatever the Court has ordered me to do, and I don't have any problem with that whatsoever.

> The Court: You know, there has been too many times when I've had a defendant want to represent himself totally mess up the trial and come in later with motions that he was not properly represented; and I've seen that happen in state court, too.

> [Attorney] Baker: I can assure the Court that I'm not chomping at the bit to be advisory counsel, but I was basically trying to do what I was told.

> The Court: Thank you. Anything you want to say about the two motions?

In light of the above record, the government's position that Mr. Baker's desire to represent himself was not "clear and unequivocal" is disingenuous. From his initial appearance before the court to the first day of his trial, Mr. Baker consistently stated his desire to represent himself. While Mr. Baker did request an advisory counsel, this by no means waived or lessened his right to represent himself. *See United States v. Padilla*, 819 F.2d 952, 959 (10th Cir. 1987) ("once a defendant has declared his desire to proceed pro se, appointment of standby counsel is a preferred, though not mandatory, practice"). Furthermore, there have been no allegations nor evidence that Mr. Baker was incompetent to knowingly and intelligently waive his right to counsel.

The district court's reasons for disallowing Mr. Baker to represent himself are contrary to precedent. The district court focused on Mr. Baker's lack of legal knowledge and its concern that without an attorney he would not have his day in court. We have held "that a court determination that an accused lacks expertise or professional capabilities cannot justify denying the right of self-representation." *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir.), *cert. denied*, 429 U.S. 925 (1976). Any prejudice Mr. Baker may have suffered by foregoing his right to legal representation was a risk he knowingly wished to incur. It is also important to note that the district court's concern of Mr. Baker being successful in an appeal on the ground of ineffective assistance of counsel was unfounded as "a defendant who exercises his right to appear pro se cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel." *Wiggins*, 465 U.S. at 177 (internal quotations omitted).

In this case, Mr. Baker clearly and unequivocally requested the right to represent himself in a timely manner. It is evident from the record that Mr. Baker understood his rights and wished to knowingly waive them. There is no indication that he was incompetent to do so. We are sympathetic to the difficulties district courts face in cases involving pro se litigants; however, in a situation such as this, we are compelled to reverse Mr. Baker's conviction and remand for a trial free from

constitutional error. *See McKinley*, 58 F.3d at 1483.

**REVERSED AND REMANDED.**