**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 27 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WAYNE FRANK BARBUTO,

Defendant - Appellant.

No. 02-4072
(D. Ct. No. 2:00-CR-197K)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **HOLLOWAY**, and **KELLY**, Circuit Judges.

Defendant-Appellant Wayne Frank Barbuto was convicted of two counts of possession of firearms and ammunition by a restricted person, 18 U.S.C. § 922(g), and one count of dealing in firearms without a license, 18 U.S.C. § 922(a)(1). Mr. Barbuto filed a timely notice of appeal on April 23, 2002. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.  Background

In April of 2000, the Bureau of Alcohol, Tobacco, and Firearms ("ATF") began investigating Mr. Barbuto, based on reports that he had illegally sold firearms.  At a gun show, ATF agents purchased a 50-caliber firearm from Mr. Barbuto.  Subsequently, the ATF agents contacted Mr. Barbuto and arranged to purchase two more 50-caliber firearms.  Following these transactions, the ATF agents arrested Mr. Barbuto and executed a search warrant for his home.  The search uncovered equipment used in the manufacture of firearms.

Following his arrest, the government charged Mr. Barbuto with one count of possession of a firearm by a restricted person, one count of possession of ammunition by a restricted person, and one count of dealing in or manufacturing firearms without a license.[1]

The district court initially appointed Mark Moffat to represent Mr. Barbuto, but Mr. Moffat later filed a motion to withdraw, based on Mr. Barbuto's desire to represent himself.  The district court granted Mr. Barbuto's request, but assigned Mr. Moffat as standby counsel.  Several months later, Mr. Moffat filed a motion to withdraw as standby counsel, based on a conflict that had developed between him and Mr. Barbuto.  The district court granted the motion, and then appointed Richard MacDougall as standby

---

[1] Mr. Barbuto did not have a license to manufacture or deal firearms, and he had a prior felony conviction in 1967.

counsel.

After numerous continuances, the district court set the trial date for December 17, 2001. On the day of trial, the following colloquy occurred between the district court and Mr. Barbuto:

Mr. Barbuto: For and on the record, I am not the defendant. I am here by special visitation. I am the secured party in this matter. I have an interest in the debtor. My name is spelled upper-case W, lower-case A, lower-case Y, lower-case N, lower-case E, upper-case B, lower-case A, lower-case R, lower-case B, lower-case U, lower-case T, lower-case O. My name is property. If there is any use of my name, I need to be paid. I do not consent to my all-capital-letter name being used for commercial gain without my consent, which is herewith denied.

Court: Thank you, Mr. Barbuto. For the record, you are the criminal defendant in this case, and your name will be used as necessary throughout this trial as it is in every trial in which a person is involved. Now, are you going to represent yourself, or not?

Mr. Barbuto: Are we doing business here?

Court: We are. We are doing business in the sense that we are going to proceed with the trial. We are certainly not doing business for commercial gain by the use of your name. Now, my question is, are you going to represent yourself and proceed with this trial or not?

Mr. Barbuto: I am myself.

Court: Are you going to represent yourself in this trial?

Mr. Barbuto: I am myself. I am not the defendant.

Court: You are the defendant. Are you going to represent yourself?

Mr. Barbuto: I have a security interest in the defendant which I can prove from the UCC 1 file. Would you like to see a copy?

Court: Actually, I've seen a copy of it.  All right, Mr. Barbuto, you're obviously not going [to] follow the rules of this Court.  I terminate the right to represent yourself.  Mr. MacDougall will represent you, and we'll proceed with the trial.

Does the government have any comment on that?  And the Court has the right to terminate the defendant's right to represent himself when he won't comply with the rules of court.  He won't sit at counsel table, and he's apparently not going to proceed.

Mr. MacDougall?

Mr. MacDougall: Your Honor, I will do my best, but I will indicate for the last month I haven't had any contact with Mr. Barbuto.

Court: I understand.

Mr. MacDougall: And I have really not been able to put this case together for trial, but I will simply labor along the best I can.[2]

**********

(Conference at the Bench.)

Court: Mr. Barbuto, are you ready to take your seat at the table and represent yourself in this matter?

Mr. Barbuto: As a secured party, I have no business testifying.

Court: So you're not going to participate?  Is that what you are telling me?

Mr. Barbuto: I am not going to testify, as I am the secured party.

Court: As a criminal defendant, you have the right to testify or not testify.  My question is, are you going to come up here and help pick a jury and make an option (sic) statement?  Are you going to cross examine witnesses?

---

[2] Mr. MacDougall made similar comments during the district court's December 13, 2001 hearing.

Mr. Barbuto: Are you going to order me to do that?

Court: No.  Actually, to be honest with you, I'd prefer that Mr. McDougall represent you rather than you represent yourself, but you have the right to represent yourself, but you have got to go ahead and do it if you're going to exercise that right.  If you don't represent yourself and exercise the right and do what people do who represent clients like you, you forfeit the right to represent yourself.

Are you going to represent yourself or not?  If you're going to represent yourself, or not, you're going to follow the rules of trial as I've been telling you for six months.  What are you going to do?

Mr. Barbuto: I have no business testifying here.  Do you have a claim against me?

Court: The United States has brought a criminal action against you, as you know.

Mr. Barbuto: Does anyone in this courtroom have a claim against me?

Court: The United States has brought a criminal action against you, as you well know, by an Indictment by a Grand Jury, as you well know.

Mr. Barbuto: May I cross examine the United States on the stand?

Court: You bet you can.  When you're representing yourself, you can cross examine the witnesses that the United States presents against you to make its case.

Mr. Barbuto: I do not represent myself, I am myself.

Court: You've just lost the right to represent yourself.  Whether this trial goes forward now or later, you're not going to represents (sic) yourself.

(Conference at the bench.)

Court:  Let's go ahead.  Bring the jury panel in.

The Court finds that the defendant has been completely

- 5 -

uncooperative, and as is the Court's prerogative, the Court terminates the defendant's right to represent himself under well-established law. Therefore, defendant will be represented in this matter by Mr. Richard MacDougall who is standby counsel.

After the district court decided to have Mr. MacDougall represent Mr. Barbuto, the case proceeded to trial.

Following trial, a jury found Mr. Barbuto guilty on two counts of possession of firearms and ammunition by a restricted person, 18 U.S.C. § 922(g), and one count of dealing in firearms without a license, 18 U.S.C. § 922(a)(1). This appeal followed.

## II. Discussion

On appeal, Mr. Barbuto raises two arguments. First, he argues that the district court violated his Sixth Amendment right to represent himself at trial. Second, Mr. Barbuto argues that the district court erred in appointing Mr. MacDougall to represent him without granting a continuance of the trial. We consider each contention in turn.

A. <u>Whether the District Court Violated Mr. Barbuto's Sixth Amendment Right to Represent Himself at Trial.</u>

In considering Mr. Barbuto's claim under the Sixth Amendment, we review the district court's findings of historical fact for clear error, while we review the ultimate determination of whether a constitutional violation occurred de novo. *See United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir. 2000).

"A criminal defendant has a constitutional and a statutory right to self-representation." *Id.* To invoke the right, a criminal defendant must (1) "'clearly and

unequivocally' assert his intention to represent himself," (2) "make this assertion in a timely fashion," and (3) "'knowingly and intelligently' relinquish the benefits of representation by counsel." *Id.* (citations omitted). Further, the right to self-representation is not absolute. *United States v. Akers*, 215 F.3d 1089, 1097 (10th Cir. 2000). In certain instances, "a court may terminate the right to self-representation, or the defendant may waive it, even after he has unequivocally asserted it." *Munkus v. Furlong*, 170 F.3d 980, 984 (10th Cir. 1999) (citation omitted).

In this case, the trial court initially granted Mr. Barbuto's request to proceed *pro se*. However, by refusing to respond to the district court's inquiries regarding his intention to continue representing himself, Mr. Barbuto forfeited his Sixth Amendment right to self-representation. As in *United States v. Bennett*, "[t]he record does not show that the defendant took a clear and unequivocal position on self-representation, and the ruling of the trial court was justified." 539 F.2d 45, 51 (10th Cir. 1976). In addition, as the government points out, it is difficult to see how the district court could have proceeded without receiving a response from Mr. Barbuto regarding his decision on whether to continue representing himself.[3] *See United States v. Brock*, 159 F.3d 1077, 1081 (7th Cir. 1998) ("[Defendant's] steadfast refusal to answer the court's questions

---

[3] In other words, we do not simply deal with a defendant's failure to respond to a question from the court. Rather, the question at issue — whether defendant intended to proceed *pro se* — was one that the district court had a duty to address prior to proceeding to trial.

made it extremely difficult for the court to resolve threshold issues, such as whether the defendant would be represented by counsel."); *United States v. Reddeck*, 22 F.3d 1504, 1510 (10th Cir. 1994) ("We have repeatedly shown concern with the use of the right to waive counsel as a 'cat and mouse' game with the courts."). Mr. Barbuto's non-responsiveness implicated not only his Sixth Amendment right to self-representation, but also his Sixth Amendment right to assistance of counsel. *Cf. United States v. Mackovich*, 209 F.3d 1227, 1237 (10th Cir. 2000) ("In ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation.") (internal quotations, quotation marks, and citations omitted).

Based on the above, we affirm the district court's decision revoking Mr. Barbuto's right to self-representation.

B.      Whether the District Court Erred in Appointing Counsel to Represent Mr. Barbuto Without Granting a Continuance of the Trial.

"We review denial of a motion to continue for abuse of discretion, assigning error only if the district court's decision was 'arbitrary or unreasonable and materially prejudiced the [defendant].'" *United States v. McKneely*, 69 F.3d 1067, 1076-77 (10th Cir. 1995) (quoting *United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990)).

In this case, defense counsel did not request a continuance.[4] Thus, the issue we must consider is whether the district court's failure to *sua sponte* grant a continuance on the day trial was set to begin amounted to an abuse of discretion. The answer is plainly no.

In determining whether the denial was "arbitrary or unreasonable," we must examine a number of factors, including:

> [1] the diligence of the party requesting the continuance; [2] the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; [3] the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; [4] the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

*Rivera*, 900 F.2d at 1475.

Here, in addition to defense counsel's failure to request a continuance, all the *Rivera* factors militate in favor of rejecting Mr. Barbuto's claim. First, the record demonstrates that Mr. Barbuto's actions were the antithesis of diligent. Second, based on Mr. Barbuto's continued refusal to speak to Mr. MacDougall, it is highly unlikely that any continuance would have materially improved Mr. MacDougall's preparation for trial. Third, given that trial was set to begin on the day Mr. Barbuto suggests that the district court should have granted a continuance, coupled with the district court's prior three-

---

[4] To the extent Mr. Barbuto may assert that his counsel improperly failed to seek a continuance, this claim is not before us. Mr. Barbuto raised no Sixth Amendment ineffective assistance claims, and we express no opinion on any such claim.

month postponement of trial, a further continuance would have resulted in extreme prejudice to the government, its witnesses, and the court.  Finally, Mr. Barbuto points to no evidence of actual (as opposed to the potential for) prejudice.

For all these reasons, we reject Mr. Barbuto's argument challenging the district court's failure to *sua sponte* grant a continuance on the day of trial.

## III.  Conclusion

In light of the preceding, we AFFIRM.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge